## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
===============================
                                :
AUCTUS FUND, LLC,               :
                                :
        Plaintiff,              :
                                :
    v.                          :        Civil Action No. _____
                                :
VERUS INTERNATIONAL, INC.       :
 f/k/a REALBIZ MEDIA GROUP, INC., :
                                :
        Defendant.              :
                                :
===============================
```

## COMPLAINT AND DEMAND FOR JURY TRIAL

## I. INTRODUCTION

1.      The Plaintiff, Auctus Fund, LLC, (hereinafter "Auctus" or the "Fund"), respectfully submits its Complaint and Demand for Jury Trial (hereinafter the "Complaint") against the Defendant, Verus International, Inc. f/k/a RealBiz Media Group, Inc. (hereinafter the "Company" or "VRUS"), in the above-captioned action.  The Plaintiff's allegations, as set out herein, are asserted for injunctive and equitable relief, and for its general, compensatory and consequential damages arising from, and resulting from, the Defendant's violations of the following:

   a)     Section 10(b) of the Securities Exchange Act of 1934, *as amended* (hereinafter the "Exchange Act"), 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5;

   b)     Massachusetts Uniform Securities Act, M.G.L. c.110A, §§ 101, *et seq.*, *as amended* (hereinafter the "Uniform Securities Act");

   c)     breaches of contracts;

d)      breaches of implied covenant of good faith and fair dealing;

e)      unjust enrichment;

f)      breaches of fiduciary duty;

g)      fraud and deceit;

h)      negligent misrepresentation; and/or

i)      the Massachusetts Consumer Protection Act, *as amended*, M.G.L. c. 93A, §§ 2 and 11.

2.      The Plaintiff further alleges that, as a result and as caused by the Defendant's breaches, actions, omissions, policies, practices, and/or courses of conduct, Auctus has suffered irreparable harm, requiring injunctive relief and specific performance, harm to its business and reputation in the investment industry, damages from the Defendant's coercion, duress, and unfair and deceptive anti-competitive acts, causing lost revenue, lost profits and prospective business, together with its injuries and damages.

3.      The Plaintiff respectfully requests that its causes of action against the Defendant proceed to a trial by jury, that a judgment be entered on all Counts against the Defendant and that Auctus be awarded its general, compensatory and consequential damages and losses, costs, interest, plus multiple and/or punitive damages, attorneys' fees, and grant, order and enter temporary, preliminary and permanent injunctive and equitable relief, and grant, order and enter declaratory relief, and any such other relief as this Honorable Court deems just and appropriate.

## II. **PARTIES**

4.      The Plaintiff, Auctus Fund, LLC is a limited liability company, duly organized in the State of Delaware, with its principal place of business located at 545 Boylston Street, 2nd Floor, Boston, Massachusetts 02116.

5.     Upon information and belief, the Defendant, Verus International, Inc., f/k/a RealBiz Media Group, Inc., is a corporation, duly organized in the State of Delaware, with a principal place of business located at 9841 Washingtonian Boulevard, #390, Gaithersburg, MD 20878.

### III. <u>JURISDICTION AND VENUE</u>

6.     The Plaintiff asserts that this Honorable Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and under the Securities Act of 1933, *as amended*, 15 U.S.C. §§ 77a, *et seq.* (hereinafter the "Securities Act"), and under the Exchange Act, 15 U.S.C. §§ 78a, *et seq*.

7.     The Plaintiff contends that, pursuant to 28 U.S.C. § 1391(b), venue is proper in the District of Massachusetts in that, pursuant to the Transaction Documents and the Inducement Transaction Documents (as each is defined below), the Plaintiff Auctus and Defendant VRUS agreed that any and all disputes between and/or among them shall be brought, *inter alia*, in the state or federal courts in the Commonwealth of Massachusetts. Additionally, this Court is in such District where the Plaintiff Auctus is headquartered and has its principal place of business and is where the violated conduct described herein is alleged to have occurred.

8.     This Court has personal jurisdiction, generally and specifically, over the Defendant by express terms of the Transaction Documents and the Inducement Transaction Documents, and as arising from its extensive business contacts, generally over time and specifically, in its business dealings with Plaintiff Auctus within the Commonwealth of Massachusetts.

## IV. <u>FACTUAL BACKGROUND</u>

### A.      <u>The Auctus / VRUS Transaction Documents and Investment Contracts</u>

9.      On or about May 7, 2017, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "First Purchase Agreement") and a certain Convertible Promissory Note (hereinafter the "First Convertible Note" or the "2017 Convertible Note," and, with the First Purchase Agreement and other documents, collectively hereinafter the "First Transaction Documents"), thereby entering into a contract with Plaintiff Auctus for its investment in VRUS.  *See* First Convertible Note, attached, restated and incorporated by reference herein as **<u>Exhibit A</u>**.

10.      On or about July 26, 2018, the Company executed, *inter alia*, a certain Securities Purchase Agreement (hereinafter the "Second Purchase Agreement," and, with the First Purchase Agreement, collectively hereinafter as the "Purchase Agreements") and a certain Convertible Promissory Note (hereinafter the "Second Convertible Note" or the "2018 Convertible Note," and, with the 2017 Convertible Note, collectively hereinafter as the "Convertible Notes" or the "Notes"; and, with the Second Purchase Agreement and other documents, collectively hereinafter the "Second Transaction Documents"; and, with the First Transaction Documents, collectively hereinafter as the "Transaction Documents"), thereby entering into further contracts with Plaintiff Auctus for its additional investment in VRUS.  *See* Second Convertible Note, attached, restated and incorporated by reference herein as **<u>Exhibit B</u>**.

11.      A review of the Plaintiff's Transaction Documents reveals that the Notes have a conversion feature into which entitles the Plaintiff to convert, at amounts and upon timing that Auctus deemed appropriate, into the Defendant's obligations into freely traded shares of VRUS common stock.  Under the terms and conditions of the Transaction Documents, the Plaintiff had a

contractual right to a conversion price of at a lower trading price of VRUS common stock arising from previous trading days, including and preceding the Conversion Date.

12.     By the Transaction Documents, the Defendant was also required to allocate and reserve shares of its common stock for future conversions by the Plaintiff. The reservation of shares was an independent obligation by the Defendant to the Plaintiff, and was a mechanism by which to effectuate the share conversion as envisioned by the Notes.

13.     In reliance upon the Transaction Documents, during the relevant time period, the Plaintiff issued Notices of Conversions and converted portions of its investment in the Defendant into shares of freely traded VRUS common stock in the over-the-counter (hereinafter "OTC") securities markets, and, as a VRUS shareholder and at various times, the Plaintiff has held certain equity positions in VRUS shares in the Defendant Company.

14.     In detrimental reliance upon the information, representations and statements from the Defendant, the Plaintiff invested hundreds of thousands of dollars in the Company, which has, and has had, a fiduciary duty and a duty of the utmost loyalty to the Plaintiff.  Unfortunately, to its detriment, the Plaintiff has learned that the Defendant had misrepresented and deceived the Fund with respect to a corporate transaction involving the spin-off of a certain corporate division, and perpetrated securities fraud in connection with the offer, purchase and sale of securities, in violation of, *inter alia*, Section 10(b) of the Securities Exchange Act of 1934, as amended, and Rule 10b-5, as promulgated thereunder, and under the Uniform Securities Act, M.G.L. c. 110A.

**B.     Defendant's Misrepresentations and Omissions of Material Facts and Securities Fraud in Connection with Offer, Purchase and Sale of Securities**

15.     The Plaintiff asserts and alleges that the Defendant misrepresented, omitted and failed to provide material facts to Auctus in connection with its investments and in the offer,

purchase and sale of securities, and especially with respect to the spin-off and related corporate transactions of Defendant VRUS.

16.     In or about the summer of 2018, the Defendant engaged in a transaction by which the distribution of the Company's real estate division was spun-off into a separate corporation, Nestbuilder.com Corporation (hereinafter "Nestbuilder").  Nestbuilder.com Corp. is, and was, a corporation, duly organized under the laws of the State of Nevada.

17.     In a certain Form 10-Q, as filed with the U.S. Securities and Exchange Commission (hereinafter the "SEC" or the "Commission"), the Defendant described the spin-off transaction as follows:

> "We entered into a Contribution and Spin-off Agreement with NestBuilder.com Corp. ('NestBuilder') on October 27, 2017, as amended on January 28, 2018, whereby, effective as of August 1, 2018, we spun off our real estate division into NestBuilder. *All of our stockholders as of July 2, 2018, the record date, which held their shares as of July 20, 2018, the ex-dividend date, received one share of NestBuilder common stock for each 900 shares of our Company owned.* As a result of the spin-off of the real estate segment, all related assets and liabilities are disclosed net as current assets and current liabilities within the consolidated balance sheets, and all related income and expenses are disclosed net as income (loss) from discontinued operations within the consolidated statements of operations and comprehensive income (loss).

*See* Verus International, Inc. Form 10-Q for the quarter ending January 31, 2019, and as Filed March 25, 2019 , at p. 10 (emphasis added), attached, restated and incorporated by reference herein as **Exhibit C**.

18.     In its press release, entitled "*RealBiz Media Group Corporate Update: Announces Completion of Spin-Off and New Contract Covering Multiple Products*," dated August 16, 2018, the Company stated, in pertinent part, as follows:

> "Gaithersburg, MD, Aug. 16, 2018 (GLOBE NEWSWIRE) -- RealBiz Media Group, Inc. (OTCPink: RBIZ) (the 'Company') is pleased to announce that as of August 10, 2018, the distribution of the NestBuilder real estate division was successfully completed.  This marks the starting point for Verus Foods as an

independent company with a singular focus on the food industry. Most importantly, the Company will now be able to pursue a variety of business opportunities that had been placed on hold under the prior structure.

* * * *

'Now that we are fully independent, we finally have the freedom to create our own identity and become more active in pursuing growth opportunities,' explained Verus CEO Anshu Bhatnagar. 'This contract represents new business (not in our current backlog) and is just the start of the kind of recurring orders that are available to us with the right financing. In this case, we can rely on the LC to minimize our need for funds, while still generating significant revenue.'

* * * *

In terms of corporate matters, the completion of the NestBuilder distribution will now enable Verus to file for a name and symbol change, which is expected as early as next week. Due to the significant number of strategic initiatives in various stages of development, the Company has also elected to discuss topics such as capital structure, additional financing, and potential new business lines in follow-on updates.

'I just completed a very productive international business trip where I met with suppliers, customers and potential partners,' said CEO Bhatnagar. 'Due to the significant number of strategic initiatives currently in process, we have decided to schedule a more detailed update after the outcomes of these discussions have been determined. We are currently in near-term negotiations involving new contracts, sources of financing and, for the first time, merger and acquisition opportunities – each of which could have a material effect on our capital structure and the strategic direction of our business. We expect to have clarity on some of these initiatives in the next several weeks.'

*See* Certain Pages of OTCMarkets.com, dated April 4, 2019, and referencing the Company's Press Release, "*RealBiz Media Group Corporate Update: Announces Completion of Spin-Off and New Contract Covering Multiple Products*," dated August 16, 2018, attached, restated and incorporated by reference herein as **Exhibit D**.

19.     The spin-off transaction of Nestbuilder by the Defendant was a material event which materially impacted the finances, operations and prospects of the Defendant, and materially affected the terms and conditions of the Transaction Documents between the Parties.

20.     Between in or about the summer of 2018 and in or about February 2019, the Plaintiff and the Defendant negotiated as to the dispute, which had arisen between them relating to the Auctus investment in the Company.

21.     On or about February 8, 2019, the Company fraudulently induced the Plaintiff to execute a series of contracts in order to resolve their dispute, including but not limited to an Inducement Agreement, a Release, and a Payoff Agreement. *See* Inducement Agreement between Auctus Fund, LLC and Verus International, Inc., dated February 8, 2019, attached, restated and incorporated by reference herein as **Exhibit E**; Release between Auctus Fund, LLC and Verus International, Inc., dated February 8, 2019, attached, restated and incorporated by reference herein as **Exhibit F**; Payoff Agreement, between Auctus Fund, LLC and Verus International, Inc., dated February 8, 2019, attached, restated and incorporated by reference herein as **Exhibit G**, and, with the Inducement Agreement and the Release, collectively hereinafter the "Inducement Transaction Documents").

22.     Under the Inducement Agreement, the Defendant agreed to pay Auctus $200,000.00 in cash, and "facilitate the delivery of a minimum of 90,000 free trading shares of the common stock of Nestbuilder.com Corp., … on or before February 8, 2019," and "facilitate the delivery of such number of additional free trading shares of common stock of Nestbuilder such that the Shares together with the additional shares shall equal, in the aggregate, 201,153 shares on or a minimum of 90,000 free trading shares of the common stock of Nestbuilder.com Corp., …" on or before March 8, 2019. Inducement Agreement (**Exhibit E**), ¶¶ 3 & 4 at p.1.

23.     Moreover, the Inducement Agreement, in a provision entitled "*Nestbuilder Shares*," provided, in pertinent part, as follows:

> **"Nestbuilder Shares**. In order to induce the Lender to enter into the Release and this Agreement, the *Company hereby agrees to facilitate the delivery of the Additional Shares on or prior to March 8, 2019* (the "**Delivery Date**"). The Delivery Date shall be extended to March 22, 2019 if the Company is unable to facilitate the delivery of the Additional Shares by March 8, 2019 solely as a result of a delay in processing of the transfer of the Additional Shares to the Lender by Nestbuilder's transfer agent (so long as the Company has (i) provided all documentation required by Nestbuilder's transfer agent, stock powers, and transfer instructions to Nestbuilder's transfer agent by March 8, 2019 for the transfer of the Additional Shares, and (ii) paid any applicable purchase price to the transferor(s) of the Additional Shares by March 8, 2019)…."

*Id*. (**Exhibit E**), § 2, at p.1 (emphasis added).

24.     Section 3 of the Inducement Agreement, in a provision entitled "*Default,*" provided, in pertinent part, as follows:

> **"Default**. In the event that the Company is unable to facilitate the delivery of the Additional Shares by the Delivery Date (the "**Default**"), the *Company shall pay the Lender $10,000 dollars on the first date of the Default and on each monthly anniversary of such Default if the Default shall not have been cured by such date (pro-rated for periods less than thirty (30) days) until the Default is cured*. For the avoidance of doubt, any payments by the Company to the Lender pursuant to this Section 3 of this Agreement *shall not in any way reduce or limit Auctus' rights or claims against the Company with respect to the Preserved Claims* (as defined in the Release)."

*Id*. (**Exhibit E**), § 3, at p.1 (emphasis added).

25.     Section 4 of the Release, in a provision entitled "*Preserved Claims,*" provided, in pertinent part, as follows:

> "Preserved Claims. For the avoidance of doubt, and notwithstanding anything to the contrary in this Release, the Releasor shall retain all of the Releasor's rights with respect to all federal, state, local, foreign and any other jurisdiction's statutory or common law claims (including claims for contribution and indemnification), causes of action, complaints, actions, suits, defenses, debts, sums of money, accounts, covenants, damages, orders, judgments and demands of any nature whatsoever, in law or equity, known or unknown, of any kind, including, but not limited to, claims or other legal forms of action, that the Releasor ever had, now has, may have, may claim to have, or may hereafter have or claim to have, against the Company and its affiliates, agents, employees, officers, directors, managers, shareholders, stockholders, stakeholders, owners, predecessors, successors, assigns, subrogees, insurers, trustees, trusts, administrators, fiduciaries and representatives, if any, but solely those arising from or related to the Releasor's

rights under Section 1.6 of the Notes with respect to shares of common stock of Nestbuilder.com Corp., a Nevada corporation ('Nestbuilder'), in connection with the Company's spin off of Nestbuilder (the 'Preserved Claims')."

Release (**Exhibit F**), § 4, at p.3.

26.    In its press release, entitled "*Verus International Announces $1.45 Million Financing and Retirement of Notes*," dated February 12, 2019, the Company stated, in pertinent part, as follows:

> "Gaithersburg, MD, Feb. 11, 2019 (GLOBE NEWSWIRE) -- via NEWMEDIAWIRE -- Verus International, Inc. ('Verus' or the 'Company') is pleased to announce that it has received $1.45 million in funding, as detailed in a Form 8-K filed today. The notes were placed with two separate institutional-quality shareholders; individuals who had already invested in Verus through prior purchases. Importantly, this funding places the stock in the hands of friendly equity-oriented investors who expressed a desire to increase their stake in the Company.
>
> Concurrent with this funding, *Verus is pleased to announce that it has retired all of the variable rate convertible notes* ("toxic notes") held by four separate creditors. This action is particularly important because it will *enable Verus to remove a sizeable reserve from its balance sheet and avoid paying millions of dollars in penalties and other charges*. As part of this multi-party agreement, the Company's other key note-holder, Donald Monaco, has agreed to extend his $530,000 note for an additional nine months, with no significant change in terms. These actions are now completed and signed off by all parties, giving the Company full releases from all prior note holder provisions.
>
> 'This marks the culmination of nearly two years of effort to put behind the legacy of RBIZ-related issues. *These negotiations were difficult and long, with as many as 15 parties involved in the process. But the end result was well worth the effort, because we negotiated terms that avoided any default interest or fees, were at a substantial discount to the standard premium, and ended the threat of significant dilution from our existing note holders*,' explained Verus CEO Anshu Bhatnagar. 'Our goal was to create a structure that minimized dilution, but left us with a good foundation to finally begin our growth stage. We know both investors well and they represent a new stage in our goal to move toward institutional-quality funding sources that carry better terms and involve long-term oriented partners.'
>
> * * * *
>
> 'The impact of this funding cannot be understated,' said Bhatnagar. 'We needed to clean up these existing notes before we could commence our other growth initiatives. With the delinquent debt now erased, we can finally move ahead with a master plan that has been waiting for a green light for many months. Our goal is to

uplist to a major exchange in 2019 and to grow our business both organically and through mergers and acquisitions. This financing marks the initial step in that process.'

*See* Certain Pages of OTCMarkets.com, dated April 4, 2019, and referencing the Company's Press Release, "*Verus International Announces $1.45 Million Financing and Retirement of Notes*," dated February 12, 2019, attached, restated and incorporated by reference herein as **Exhibit H**.

27.     On or about February 8, 2019, the Defendant fraudulently induced the Plaintiff to execute the Inducement Agreement, the Release and the Payoff Agreement, while never intending to honor or perform its obligations pursuant to the same.

28.     On or about February 8, 2019, Defendant VRUS breached the Inducement Agreement and has refused and has failed to cause the delivery of a minimum of 90,000 free trading shares of the common stock of Nestbuilder.com Corp.

29.     On or about March 8, 2019, the Defendant further breached the Inducement Agreement and has refused and has failed to cause the delivery of the Additional Shares which shall equal, in the aggregate, 201,153 free trading shares of the common stock of Nestbuilder.com Corp.

30.     As of March 8, 2019, the Defendant has caused an Event of Default and has breached Section 3 of the Inducement Agreement, in that the Defendant has refused and has failed to pay Auctus $10,000.00 on or before March 8, 2019, and is liable for an additional penalty of $10,000.00 to the Plaintiff on each and every monthly anniversary thereafter as to such continuing Default.

31.     In detrimental reliance on the fraudulent conduct of VRUS and its obligations under the Inducement Agreement and the delivery of Nestbuilder Shares, the Plaintiff caused a short position to occur and, in the absence of the delivery of such Shares and Additional Shares, has

significant financial risk and irreparable harm arising from a prospective price increase due to obligation to cover such Shares and Additional Shares with its broker-dealer.

32.     Defendant VRUS has committed fraud and has made material misrepresentations and omitted material information while having a duty to disclose the same to the Plaintiff, prior to and in connection with the offer, purchase and sale of securities with Auctus, and in connection with the Inducement Transaction Documents and in connection with the Transaction Documents by which the Plaintiff invested hundreds of thousands of dollars in the Company.

33.     As a direct and proximate cause of the violations of the federal and state securities laws of the Defendant, Plaintiff Auctus has suffered irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## V. **VIOLATIONS OF LAW**

### **COUNT I - VIOLATIONS OF FEDERAL SECURITIES LAWS**

34.     The Plaintiff reasserts Paragraphs 1 through 33 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

35.     The Defendant violated Section 12(2) of the Securities Act, 15 U.S.C §77l(2), in addition to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. §240.10b-5, in that, as described herein, and in connection with the purchase, offer and sale of securities, they knowingly, recklessly and intentionally:

      a)     employed manipulative and deceptive devices and contrivances;

      b)     employed devices, schemes and artifices to defraud;

c)      made untrue statements of material fact and omitted to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and

d)      engaged in acts, practices and a course of business which operated as a fraud or deceit upon the Plaintiff.

36.      As a direct and proximate cause of the violations of the federal securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT II - VIOLATIONS OF MASSACHUSETTS STATE SECURITIES LAWS

37.      The Plaintiff reasserts Paragraphs 1 through 36 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

38.      The Defendant violated the Massachusetts Uniform Securities Act, Massachusetts General Laws Chapter 110A, §§ 101, *et seq.*, *as amended*, in that, as described herein, it offered and sold securities by means of untrue statements of material fact.

39.      The Defendant recklessly and intentionally misrepresented material information and omitted disclosure of material information to the Plaintiff in connection with the offer, purchase and sale of securities in the Commonwealth of Massachusetts.

40.      As a direct and proximate cause of the violations of the Massachusetts state securities laws by the Defendant, Plaintiff Auctus has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits,

interest, and other damages, injuries, and losses, to its detriment, and resulted in the unjust enrichment of the Defendant.

## COUNT III – BREACHES OF CONTRACT

41.    The Plaintiff reasserts Paragraphs 1 through 40 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

42.    Pursuant to the Security Purchase Agreements and the Convertible Notes, the Fund invested in the Company and sought to become a shareholder, in good faith, to join the Company in the accomplishment of its business goals and in accordance with the standards of the business and the securities industry.

43.    By its spin-off of Nestbuilder.com Corp., the Plaintiff contends that the Defendant caused Events of Default and breached the contract with the Plaintiff under the Transaction Documents, by its conduct and as described herein.

44.    Pursuant to the Inducement Transaction Documents, the Plaintiff entered into a contract with the Defendant to resolve the outstanding dispute arising from the Events of Default arising from the spin-off of Nestbuilder.com Corp. by the Defendant, as described herein..

45.    The Fund alleges that the Company is liable for a breach of contract and for a breach of an implied covenant of good faith and fair dealing. A breach of contract is failure without excuse to perform a duty which is due under the contract. Additionally, the interpretation of a contract is a question of law, not fact. If the wording is not ambiguous, then the contract must be enforced according to its plain terms.

46.    The Plaintiff performed its obligations under the Transaction Documents and under the Inducement Transaction Documents, and in good faith.

47.     The Defendant, by its conduct described herein, violated the Transaction Documents and the Inducement Transaction Documents, breaching its contracts with the Plaintiff.

48.     As a direct and proximate cause of the Defendant's breaches of its contracts, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

**COUNT IV – BREACHES OF IMPLIED
<u>COVENANT OF GOOD FAITH-FAIR DEALING</u>**

49.     The Plaintiff reasserts Paragraphs 1 through 48 of the Complaint, together with **<u>Exhibits</u>**, and restates and incorporates them herein by reference.

50.     It is well established in that every contract carries an implied covenant of good faith and fair dealing whereby the parties treat each other fairly and act in good faith and no party to the contract shall take any action to harm another party's rights under the contract. The duty imposed by this "implied covenant of good faith and fair dealing" pertains to bad faith in the performance of a contract, not just in its execution or negotiation. Implicit in every contract is the requirement on faithfulness to an agreed upon common purpose and consistency with the justified expectations of the other party.

51.     A breach of contract is the failure to perform for which legal excuse is lacking. As a matter of law, a contract existed, which the Company breached and failed to comply with the covenant of good faith and fair dealing. The law is clear - the Fund had binding contracts and the Company has no legal basis, as a matter of law, to avoid its obligations under the Transaction Documents and under the Inducement Transaction Documents, including but not limited to damages which arose, and which might arise, as a result from the breach of such Transaction Documents and Inducement Transaction Documents.

52.     The Defendant had a duty of good faith and fair dealing in its dealings with the Plaintiff and pursuant to the promises, contracts, and statements made to the Plaintiff to induce it to enter into the contracts and provide assets to the Defendant in exchange for its promise to honor its obligation under the same.

53.     Under the covenant, the Defendant was obligated to a good faith performance of its obligations under the Transaction Documents and the Inducement Transaction Documents with Auctus, and to be faithful and consistent to the justified expectations of the Plaintiff.

54.     As described above, the Defendant breached the implied covenant of good faith and fair dealing with the Plaintiff.

55.     As a direct and proximate cause of the Defendant's breaches of the implied covenant of good faith and fair dealing, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT V – UNJUST ENRICHMENT

56.     The Plaintiff reasserts Paragraphs 1 through 55 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

57.     The Defendant illegally received assets and benefits from the Plaintiff, as arising from its false and fraudulent statements and misrepresentations, and without providing equivalent value therefor.

58.     The Defendant's actions, courses of conduct, and omissions were wantonly, intentionally, and maliciously conducted against the Plaintiff, to its detriment.

59.     The Defendant has been unjustly enriched by its actions, as described herein.

60.     As a direct and proximate cause of the Defendant's unjust enrichment, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VI – BREACH OF FIDUCIARY DUTY

61.     The Plaintiff reasserts Paragraphs 1 through 60 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

62.     A fiduciary relationship existed between the Plaintiff and the Defendant, requiring it to act with a duty of the utmost loyalty and trust on behalf of the Plaintiff.  As a fiduciary, the Defendant was required to maintain and protect the welfare of the Plaintiff.

63.     By engaging in the conduct described herein, the Defendant breached its fiduciary duties to the Plaintiff.

64.     As a direct and proximate cause of the Defendant's breach of fiduciary duty, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VII – FRAUD AND DECEIT

65.     The Plaintiff reasserts Paragraphs 1 through 64 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

66.     The actions of the Defendant described herein constitute fraud and deceit, including but not limited to the following:

a)      the Defendant made false representations of material facts, and/or omitted material facts with a duty of disclosure, knowing or having reason to know

of their falsity;

b)      the Defendant made said misrepresentations and omissions for the purpose of inducing reliance from the Plaintiff; and

c)      the Plaintiff did rely upon said misrepresentations and omissions, to its detriment.

67.     As a direct and proximate cause of the Defendant's fraud and deceit, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT VIII - NEGLIGENT MISREPRESENTATION

68.     The Plaintiff reasserts Paragraphs 1 through 67 of the Complaint, together with **Exhibits**, and restates and incorporates them herein by reference.

69.     The conduct of the Defendant as described herein constitutes negligent misrepresentation in that the Defendant negligently provided the Plaintiff with erroneous and misleading information, and negligently omitted material information with a duty to disclose, to the Plaintiff's detriment.

70.     As a direct and proximate cause of the Defendant's negligent misrepresentations, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## COUNT IX - VIOLATIONS OF MASSACHUSETTS
## CONSUMER PROTECTION ACT / M.G.L. C. 93A, §§ 2 & 11

71.     The Plaintiff reasserts Paragraphs 1 through 70 of the Complaint, together with the **Exhibits**, and restates and incorporates them herein by reference.

72.     At all relevant times herein, the Defendant conducted a trade or business, as defined by the Massachusetts Consumer Protection Act, M.G.L. c. 93A, within the Commonwealth of Massachusetts.

73.     The conduct of the Defendant as described herein, constitutes unfair and deceptive trade practices, and unfair competition, under Sections 2 and 11 of the Consumer Protection Act, including but not limited to claims that the Defendant:

a)      executed the Transaction Documents and the Inducement Transaction Documents with full knowledge and understanding of the Defendant's obligations to the Plaintiff;

b)      fraudulently induced the Plaintiff to invest in the Company and thereby breached its promises to the Plaintiff;

c)      fraudulently concealed from the Plaintiff the full and complete financial and operational details and prospects of the Company in inducing the Plaintiff to make its investment in the Company;

d)      fraudulently induced the Plaintiff to enter into the Inducement Transaction Documents, while never intending to honor the same;

e)      has fraudulently exposed the Plaintiff to virtually unlimited financial risk as may arise from a prospective transaction to cover the Nestbuilder Shares and Additional Shares, and from a potential appreciation in the price of shares of Nestbuilder upon the declaration of the registration of Nestbuilder as being Effective by SEC, thereby causing the Shares and Additional Shares of Nestbuilder to be freely tradeable in the public OTC markets;

f)      knowingly and intentionally concealed these activities from the Plaintiff, to its detriment; and/or

g)      violated the requirements, terms and conditions of existing statutes, rules and regulations meant for the protection of the public's health, safety or welfare.

74.     As a direct and proximate cause of the Defendant's violations of the Massachusetts Consumer Protection Act, M.G.L. c. 93A, Sections 2 and 11, the Plaintiff has suffered, and continues to suffer, irreparable harm, and general, special, and consequential damages, including, but not limited to, loss of profits, interest, and other damages, injuries, and losses, to its detriment.

## VI. REQUESTS FOR RELIEF

WHEREFORE, the Plaintiff, Auctus Fund, LLC, respectfully request that this Honorable Court grant it the following relief:

A)      Order, grant and enter temporary, preliminary and permanent injunctive and equitable relief, and specific performance, and finding that the Plaintiff has suffered irreparable harm, has a likelihood of success on the merits, that the balance of hardships favors the Plaintiff and that it is in the public interest to grant such temporary, preliminary and permanent injunctive and equitable relief, and specific performance for the benefit of the Plaintiff, as set forth herein;

B)      Determine that the Defendant is liable for all damages, losses, and costs, as alleged herein;

C)      Determine and award the Plaintiff, Auctus Fund, LLC, the actual losses sustained by it as a result of the violations of law by the Defendant, as set forth herein;

D)      Render a judgment and decision on behalf of the Plaintiff, Auctus Fund, LLC, on all Counts of the Complaint, and issue findings of fact and rulings of law, as necessary and appropriate, that the Defendant is liable, in all respects;

E)      Order, decide, adjudge, and determine that the liability of the Defendant,  is for all losses, injuries, and damages, special, consequential, general, punitive, and/or otherwise, and for all interest and costs, as alleged herein;

F)      Award the Plaintiff, Auctus Fund, LLC, its costs, including, but not limited to, filing fees, costs, expenses and interest, for being required to prosecute this action;

G)      Award the Plaintiff, Auctus Fund, LLC, its actual attorneys' fees, for being required to prosecute this action;

H)      Award the Plaintiff, Auctus Fund, LLC, multiple, double, treble, and/or punitive damages in an amount to be determined;

I)      Enter judgment on behalf of the Plaintiff, Auctus Fund, LLC, on the Complaint;

J)      Order declaratory relief, as appropriate and as this Honorable Court deems necessary; and/or

K)      Any additional relief, which this Honorable Court deems just and proper.

**THE PLAINTIFF, AUCTUS FUND, LLC,**
**<u>DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE</u>**

Respectfully Submitted,
PLAINTIFF, Auctus Fund LLC,

By its Attorneys,

    /s/ *Philip M. Giordano*
Philip M. Giordano, Esq. (BBO No. 193530)
Giordano & Company, P.C.
REED & GIORDANO, P.A.
47 Winter Street, Suite 800
Boston, Massachusetts 02108-4774
Telephone: (617) 723-7755
Facsimile: (617) 723-7756
Email: pgiordano@reedgiordano.com

Dated: April 4, 2019