UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                  )
AUCTUS FUND, LLC                  )
                                  )
                  Plaintiff,      )
                                  )
         v.                       )      CIVIL ACTION
                                  )      NO. 19-10641-WGY
VERUS INTERNATIONAL, INC. f/k/a   )
REALBIZ MEDIA GROUP, INC.         )
                                  )
                  Defendant.      )
                                  )
```

YOUNG, D.J.                                February 25, 2020

**ORDER**

Auctus Fund, LLC ("Auctus") alleges that Verus
International, Inc. ("Verus"), formerly known as RealBiz Media
Group, Inc., materially misrepresented its corporate prospects
before Auctus invested in the company, and further alleges that
Verus failed to honor a settlement agreement that was supposed
to end the first dispute.  In moving to dismiss, Verus claims
that the case is moot and that a release signed by Auctus in
that settlement agreement bars the claims now before the Court.
As briefly explained below, the Court agrees with Verus that
Auctus is bound by the release.  Nonetheless, Auctus also brings
several claims that are not barred by the release, some of which
may go forward.

The following facts are drawn from Auctus's amended
complaint.  Pl. Auctus's First Am. Compl. Dem. Jury Trial ("Am.
Compl."), ECF No. 29.  Auctus and Verus executed two initial
transactions as part of Auctus's "investment" in Verus, each of
which contained a Securities Purchase Agreement and a
Convertible Promissory Note: the first set of transactions
occurred on May 7, 2017 and the second set on July 26, 2018.
Id. ¶¶ 9-10.  When a dispute arose between Auctus and Verus --
in part due to Verus's "spin-off transaction" in the summer of
2018 of its former real-estate division, Nesbuilder.com
Corporation ("Nestbuilder"), id. ¶ 42 -- the two companies
negotiated.  Id. ¶ 48.  On February 8, 2019, Auctus and Verus
reached an agreement ("Inducement Agreement") under which Verus
agreed to pay Auctus $200,000 and "facilitate the delivery" of
201,153 shares of Nestbuilder stock by March 8, 2019, and also
that Verus would pay a $10,000 monthly penalty if it failed to
deliver the shares.  Id. ¶¶ 50-53.  In exchange, Auctus signed a
release id., Ex. M., Release ("Release"), ECF No. 29-14, which
released Verus from all claims except "those arising from or
related to the Releasor's rights under Section 1.6 of the Notes
with respect to shares of common stock of Nestbuilder.com Corp."
Am. Compl. ¶ 53.  Auctus alleges that the Inducement Agreement
and Release were obtained by fraud because Verus never intended
to comply.  Id.

[2]

The amended complaint alleges nine causes of action against Verus: violations of federal securities laws (count I), id. ¶¶ 67-69; violations of Massachusetts securities laws (count II), id. ¶¶ 70-73; breaches of contract (count III), id. ¶¶ 74-81; breaches of implied covenant of good faith and fair dealing (count IV), id. ¶¶ 82-88; unjust enrichment (count V), id. ¶¶ 89-93; breach of fiduciary duty (count VI), id. ¶¶ 94-97; fraud and deceit (count VII), id. ¶¶ 98-100; negligent misrepresentation (count VIII), id. ¶¶ 101-103; violations of Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A, §§ 2, 11 (count IX), id. ¶¶ 104-107.

On October 24, 2019, Verus moved to dismiss the amended complaint. ECF No. 35. Verus argues that the amended complaint is moot because Auctus already received 201,157 (a few extra due to a rounding error, Verus says) shares of Nestbuilder. Mem. Law Supp. Mot. Dismiss Pl.'s Am. Compl. ("Def.'s Mem.") 3-4, ECF No. 37. Verus further argues that the alleged misrepresentations described in the amended complaint are not actionable for a variety of reasons, id. at 5-14, and that the amended complaint is otherwise deficient, id. at 14-20. In particular, Verus argues that Auctus is barred from bringing several of its claims due to the Release. Id. at 17.

Verus's mootness argument is unavailing. "A case becomes moot . . . 'only when it is impossible for a court to grant any

[3]

effectual relief whatever to the prevailing party.'" Campbell-
Ewald Co. v. Gomez, 136 S. Ct. 663, 669 (2016) (quoting Knox v.
Service Emps. Int'l Union, 567 U.S. 298, 307 (2012)). This
impossibility arises only when a plaintiff has "received
complete relief." Bais Yaakov of Spring Valley v. ACT, Inc.,
798 F.3d 46, 51 (1st Cir. 2015) (quoting Cruz v. Farquharson,
252 F.3d 530, 533 (1st Cir. 2001)). Auctus has not "received
complete relief" here, for the simple reason that Auctus also
seeks "consequential damages and losses, costs, interest, plus
multiple and/or punitive damages, attorneys' fees." Am. Compl.
¶ 3; id. ¶ 51 ("Defendant has refused and has failed to pay
Auctus $10,000.00 on or before March 8, 2019, and is liable for
an additional penalty of $10,000.00 to the Plaintiff on each and
every monthly anniversary thereafter as to such continuing
Default."). Verus's rebuttal turns on its factual assertion
that Auctus did not suffer any losses and has therefore been
made completely whole. Def.'s Mem. 4, 18. For the time being,
however, the Court must accept Auctus's factual account. Thus,
because the Court could still award relief should Auctus
prevail, the case is not moot.

Yet the Court agrees with Verus that many of the claims are
barred by the Release. Auctus argues that the Release should
not be enforced because Verus procured it through fraudulent
inducement by promising to deliver shares of Nestbuilder -- a

[4]

promise it had no intention to keep.  Am. Compl. ¶ 49.   Under
Nevada law, which governs the Release pursuant to a choice-of-
law clause in the document, fraud in the inducement is grounds
to rescind the contract.  Pacific Maxon, Inc. v. Wilson, 96 Nev.
867, 870, 619 P.2d 816, 818 (1980).  "Whether rescission [for
fraud in the inducement] shall be granted rests largely in the
sound discretion of the court," and "[f]raud . . . must be
clearly and satisfactorily proved."  Havas v. Alger, 85 Nev.
627, 631, 461 P.2d 857, 860 (1969).  Here, Auctus has
sufficiently alleged facts from which it may be inferred that
Verus fraudulently induced Auctus to sign the Release.

Nevertheless, the Court exercises its discretion to deny
rescission and thus enforces the Release.  This is because
Auctus has already procured the $200,000 and the Nestbuilder
shares that formed its benefit of the bargain under the Release
in a follow-up agreement with Nestbuilder, Pl.'s Mem. Opp'n
Verus's Mem. ("Pl.'s Opp'n"), Ex. A, Settlement Agreement, ECF
No. 46-1, and Auctus evinces no intention of giving those shares
and cash back.  During oral argument on January 13, 2010, ECF
No. 50, the Court put the question directly to Auctus if it
would return the cash and stock.  Counsel for Auctus declined to
make that commitment, asking instead for partial rescission.
Informed by the Court that under Nevada law "there can be no
partial rescission," Bergstrom v. Estate of DeVoe, 109 Nev. 575,

[5]

854 P.2d 860, 861 (1993),[1] Auctus still would not commit to
return the money and shares.  So be it.  The Court declines to
rescind the Release, which bars all claims (other than those
expressly preserved) prior to February 8, 2019.  All unpreserved
claims relating to the initial transactions are extinguished,
including the securities law claims (counts I and II).

What remains are the various state law claims (fraud,
negligent enrichment, breach of contract, unjust enrichment, and
chapter 93A) insofar as they relate to second series of
contracts in which the parties sought to settle their
differences.  The Court now turns to these claims.

With regard to breach of contract and breach of implied
covenant of good faith, Verus argues that any claims arising
from actions predating the Release are barred, except for claims

---

[1] As the Nevada Supreme Court explained:

When a contract has been partially performed, and one
of the parties to it makes default, the other has a
choice of remedies. He may and he must rescind or
affirm the contract, but he cannot do both. If he
would rescind it, he must immediately return whatever
of value he has received under it, and then he may
defend against an action for specific performance . .
. and he may recover back whatever he has paid. . . .
He cannot at the same time affirm the contract by
retaining its benefits and rescind it by repudiating
its burdens.

Bergstrom, 854 P.2d at 861 (emphasis in original) (quoting
German Sav. Inst. v. De La Vergne Refrigerating Mach. Co., 70 F.
146, 149-50 (8th Cir. 1895) & 5 Arthur Linton Corbin, Corbin on
Contracts § 1114 (1964)).

arising from the Nestbuilder shares as expressly provided in the
Release.  This is correct, for the reasons given above.  Verus
further argues that even with respect to the claims not barred
by the Release, Auctus suffered no loss since it eventually
received the shares and, furthermore, Verus did not technically
breach because it was only required "to facilitate" the transfer
of the shares but not actually to procure and deliver them.
Def.'s Mem. 17-18.  The distinction that Verus seeks to draw
between facilitating the transfer of the shares and actually
delivering them does not persuade the Court.  It is plain what
Verus's contractual obligation was and it did not initially
perform.  As for the loss, Auctus sufficiently alleged loss in
the form of costs and expenses in negotiating for the shares on
its own, and further in the unpaid $10,000 monthly penalty that
the Inducement Agreement imposes on Verus.  Accordingly, the
Court DENIES the motion to dismiss with respect to counts III
and IV, save for those claims barred by the Release.

    As for unjust enrichment, Verus argues that no such claim
is possible when there is a written contract.  Def.'s Mem. 19;
Leasepartners Corp. v. Robert L. Brooks Trust Dated November 12,
1975, 113 Nev. 747, 942 P.2d 182, 187 (1997) ("An action based
on a theory of unjust enrichment is not available when there is
an express, written contract, because no agreement can be
implied when there is an express agreement.").  Auctus replies

that, because it seeks to void the Inducement Agreement, there
in fact is no contract and thus the unjust enrichment count
reemerges.  Pl.'s Opp'n 20, ECF No. 46.  Auctus's argument is
sound as far as it goes, but for the reasons given above the
Court rules that the Inducement Agreement and Release are not
rescinded and thus the contract exists.  Accordingly, the Court
ALLOWS the motion to dismiss as to the unjust enrichment claim
(count V).

Verus next argues that Auctus has not stated a claim for
breach of fiduciary duty because Nevada does not recognize a
fiduciary duty owed by a corporation (as opposed to the
individual directors and officers) to its shareholders.  Def.'s
Mem. 19 (citing Brignand v. Van Wagoner Funds, Inc., No. 3:07-
CV-242-ECR-VPC, 2009 WL 2175623, at *6 (D. Nev. July 16, 2009)).
Auctus has no response to this other than to accuse the director
of breach of fiduciary duty -- but the director is not a named
defendant in this case.  Accordingly, the motion to dismiss the
breach of fiduciary duty claim (count VI) is ALLOWED.

Finally, the amended complaint asserts several claims that
sound in tort law, including fraud and deceit (count VII),
negligent misrepresentation (count VIII), and chapter 93A
violations (count IX).  Verus's main arguments in rebuffing
these allegations are similar to those it offered in responding
to the securities law claims; namely, that Auctus has not met

the clarity and particularity requirements to plead fraud under Rule 9(b) of the Federal Rules of Civil Procedure; that the alleged misrepresentations were not materially misleading; that Auctus could not have reasonably relied on them; and that Auctus suffered no loss.  These are largely fact-bound determinations, however, and Auctus has sufficiently alleged fraud, negligent misrepresentation, and violations of chapter 93A with respect to the Inducement Agreement.  Accordingly, the motion to dismiss is DENIED as to these counts, but only for allegations that are not barred by the Release.

In sum, this Court ALLOWS the motion to dismiss, ECF No. 35, as to counts I, II, V, and VI.  Yet the Court DENIES the motion to dismiss as to counts III, IV, VII, VIII, and IX.

**SO ORDERED.**

William L. Young
WILLIAM G. YOUNG
DISTRICT JUDGE